UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

ILIA K.,[1]

        Petitioner,

    v.

WARDEN OF THE MESA VERDE
DETENTION CENTER, et al.,

        Respondents.

No. 1:26-cv-02428-TLN-AC

A# 246-905-499

**ORDER**

This matter is before the Court on Petitioner Ilia K.'s ("Petitioner") Petition for Writ of Habeas Corpus ("the Petition"). (ECF No. 1.) Respondents filed a response. (ECF No. 7.) Petitioner filed a reply. (ECF No. 9.) For the reasons set forth below, the Petition is DENIED.

///

///

///

---

[1] The Court omits Petitioner's full name to protect sensitive personal information. *See* Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

1

## I.    FACTUAL AND PROCEDURAL BACKGROUND

This matter arises out of Petitioner's alleged unlawful civil immigration detention. The facts in this case are not disputed.  Petitioner entered the United States on January 19, 2023 seeking political asylum.  (ECF No. 7-4 at 2.)  Immigration authorities processed Petitioner, instituted removal proceedings against him, and ultimately released him into the country to await the outcome of his proceedings.  (*Id.*; ECF No. 7-2.)

On August 25, 2025, an immigration judge ordered Petitioner removed.  (ECF No. 7-6.) That same day, U.S. Immigration and Customs Enforcement ("ICE") took Petitioner into custody. (ECF No. 1 at 3.)  Petitioner did not appeal his order of removal, therefore, it became administratively final on September 25, 2026.  *See* 8 C.F.R. § 1241.1(c) (an order is final upon the expiration of the time allotted to appeal).  The parties agree that Petitioner is subject to a final order of removal and Petitioner's detention is governed by 8 U.S.C. § 1231.  (ECF No. 1 at 2–3; ECF No. 7 at 2.)

During his time in detention, Petitioner asserts he has cooperated with ICE to assist with removal, including signing forms, attending interviews, requesting assistance with translation and contacting the embassy, among other things.  (ECF No. 1 at 3–5.)  "Petitioner has consistently expressed [a] willingness to return" to his country of origin.  (*Id.* at 5.)

On February 24, 2026, ICE conducted a custody redetermination for Petitioner pursuant to 8 C.F.R. § 241.4(i), including an interview of Petitioner and a review of documents provided by Petitioner.  (ECF No. 7-1 at 3.)  On February 26, 2026, the re-determination panel recommended Petitioner's continued detention.  (*Id.*)

Through the instant Petition, Petitioner claims his detention has become unreasonably prolonged and he seeks release from custody.  (ECF No. 1.)  Petitioner has now been detained for nearly ten months in total.

## II.    STANDARD OF LAW

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in

custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

### III. ANALYSIS

Petitioner claims that his detention violates the Fifth Amendment Due Process Clause because Respondents are not significantly likely to remove him in the reasonably foreseeable future as required under *Zadvydas v. Davis*, 533 U.S. 678 (2001). (ECF No. 1 at 1.)

The Fifth Amendment prohibits government deprivation of an individual's life, liberty, or property without due process of law. U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas*, 533 U.S. at 693. These due process rights extend to immigration proceedings and detention. *Id*. at 693–94.

8 U.S.C. § 1231(a) governs detention of a noncitizen after a final order of removal has been issued. Under § 1231(a), once a removal order is final, the government must "remove the [noncitizen] from the United States within a period of 90 days." 8 U.S.C. § 1231(a)(1)(A). During the initial 90-day removal period, the government shall detain the noncitizen. 8 U.S.C. § 1231(a)(2). However, under § 1231(a)(6), certain noncitizens may be detained beyond the removal period, including "[noncitizens] who have been ordered removed, namely, inadmissible [noncitizens], criminal [noncitizens], [noncitizens] who have violated their nonimmigrant status conditions, and [noncitizens] removable for certain national security or foreign relations reasons, as well as any [noncitizen] 'who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal.'" *Zadvydas*, 533 U.S. at 688 (citing § 1231(a)(6)).

In *Zadvydas*, the United States Supreme Court considered prolonged immigration detention following a final order of removal under § 1231(a)(6). 533 U.S. 678 (2001). Although the government has statutory authority to detain noncitizens for removal, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. The Supreme Court recognized a presumptively reasonable six-month period of detention after a removal order has been issued. *Id.* at 701. Additionally, "for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id*. The *Zadvydas* Court established a burden-shifting framework: "After this 6-month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the [g]overnment must respond with evidence sufficient to rebut that showing." *Id.*

The Court will first address whether Respondents are entitled to a presumption of reasonableness as to Petitioner's prolonged detention and then address whether Petitioner's removal is reasonably foreseeable.

### A.    *Zadvydas* Presumption

The parties dispute whether the *Zadvydas* presumption applies in this case. Petitioner argues the presumptive period ended on February 22, 2026, nearly six months after his order of removal was issued. (ECF No. 1 at 2.) Respondents argue the presumptive period ends on June 25, 2026 — six months following the 90-day removal period. (ECF No. 7 at 3.) However, Respondents offer no authority or explanation for their theory that the presumptive period should begin *after* the removal period. (*See generally* ECF No. 7.)

Contrary to Respondents' argument, the *Zadvydas* Court did not create a cumulative framework. *See* 533 U.S. at 701. Rather, the central question in assessing prolonged detention is "whether the detention in question exceeds a period reasonably necessary to secure removal." *Id.* at 699. In reaching this conclusion and establishing the six-month presumptive period, the Court explicitly considered the 90-day removal period as part of the whole period of detention:

> While an argument can be made for confining any presumption to 90 days, we doubt that . . . Congress . . . believed that all reasonably

4

> foreseeable removals could be accomplished in that time.  We do have reason to believe, however, that Congress previously doubted the constitutionality of detention for more than six months.

*Id.* at 701.  Indeed, the Ninth Circuit has explicitly clarified: "the Supreme Court read the statute to permit a 'presumptively reasonable' detention period of *six months* after a final order of removal—that is, *three months* after the statutory removal period has ended."  *Kim Ho Ma v. Ashcroft*, 257 F.3d 1095, 1102 n.5 (9th Cir. 2001) (emphasis in original).

Thus, the Court rejects Respondents' argument they are entitled to a presumption of reasonableness in Petitioner's prolonged detention by tacking on six additional months *after* the 90-day removal period.  The Court finds the six-month presumptive period ended on March 26, 2026, six months after Petitioner's removal order became administratively final.  *See* 8 C.F.R. § 1241.1(c).  Respondents have now detained Petitioner for nearly nine months since his order became final, well beyond six months.  Therefore, Respondents have lost the benefit of the *Zadvydas* presumption.

### B.  Whether Petitioner's Removal is Reasonably Foreseeable

Petitioner argues, despite his cooperation, ICE has not obtained necessary travel documents, scheduled a necessary in-person consular interview, scheduled a flight, or identified a timeline for removal.  (ECF No. 1 at 2; ECF No. 9 at 1.)  Petitioner further alleges ICE has obstructed Petitioner's own efforts to advance his removal by failing to facilitate contact with his embassy.  (ECF No. 9 at 4.) The Court finds Petitioner articulates a persuasive case that there is no significant likelihood that his removal is reasonably foreseeable.

However, Respondents have rebutted Petitioner's showing.  Respondents provided two declarations from an ICE deportation officer to show Respondents are making progress in removal.  (ECF Nos. 7-1, 8-1.)  Specifically, Respondents note Petitioner has a valid passport for travel and Petitioner's citizenship verification process is complete.  (ECF No. 8-1 at 2.)  Respondents state the embassy requires an in-person interview prior to issuing a travel document but the only barrier to interview is this Court's Order not to transfer Petitioner out of this

District.[2] (ECF No. 8 at 1.) Because of this Court's Order, ICE is prohibited from transporting Petitioner to the in-person embassy interview in Virginia. (*See* ECF No. 4.) Respondents further advise that Petitioner had been added to a flight manifest for departure upon issuance of a travel document following the interview. (ECF No. 8-1 at 2.)

While the Court finds Respondents' removal efforts scant prior to the filing of this Petition and the Court is deeply concerned that ICE has not facilitated contact with Petitioner's embassy, the Court cannot find on this record that there is no significant likelihood in Petitioner's removal. *See Zadvydas*, 533 U.S. at 701 (a noncitizen "may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future."). It seems the embassy interview is the final barrier to removal and this Court's Order has prevented Respondents from completing that step.

**IV.    CONCLUSION**

Accordingly, IT IS HEREBY ORDERED:

1. The Petititon for Writ of Habeas Corpus (ECF No. 1) is DENIED without prejudice. If Respondents do not act swiftly to effect Petitioner's removal, Petitioner may file a subsequent Petition for Writ of Habeas Corpus. *See Zadvydas*, 533 U.S. at 701 ("as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink.");

2. Petitioner's Request for Ruling (ECF No. 12) is DENIED as moot;

3. Respondents' Motion to Dissolve the No Transfer Order (ECF No. 8) is DENIED as moot; and

4. The Clerk of the Court shall enter judgment and close this case.

IT IS SO ORDERED.

//

//

---

[2]    Respondents moved to dissolve the Court's Order prohibiting transfer. (ECF No. 8). Petitioner opposed the motion. (ECF No. 10.) Because the Court ultimately denies the Petition and preliminary relief ceases with the closure of the case, Respondents' motion to dissolve is denied as moot.

Date: June 24, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE